HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
REED GRANTHAM, CA Bar #294171
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, California 93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Attorneys for Defendant
TIMOTHY PANUCO

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>TIMOTHY PANUCO,<br><br>　　　　　　Defendant. | Case No. 1:24-cr-00090-JAM-BAM<br><br>NOTICE OF MOTION AND MOTION TO SUPPRESS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS A-D; DECLARATION OF REED GRANTHAM<br><br>Date:　August 19, 2025<br>Time:　9:00 a.m.<br>Judge: Hon. John A. Mendez |

PLEASE TAKE NOTICE that on August 19, 2025, at 9:00 a.m., or as soon thereafter as the matter can be heard in the Courtroom of the Honorable John A. Mendez, United States District Judge for the Eastern District of California, defendant Timothy Panuco, through counsel, Assistant Federal Defender Reed Grantham, will bring on for a hearing the following motion to suppress.

**MOTION**

Mr. Panuco, by and through his counsel of record, Assistant Federal Defender Reed Grantham, hereby moves this Court for an order suppressing all evidence obtained as a result of the unlawful search carried out by Fresno County Sheriff's Office Deputy Jovan Tamayo that occurred on or about March 4, 2024.

This motion is made pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Eastern District of California Local Rule 430.1, the Fourth Amendment to the United States

1 | Constitution, and such other statutory and constitutional rules as may be applicable.

2 |     This motion is based upon the instant motion and notice of motion, the accompanying memorandum of points and authorities, the attached declaration and exhibits, the files and records in the above-entitled case, and any and all other information that may be brought to the Court's attention before or during the hearing on this motion.

Dated: June 6, 2025                          Respectfully submitted,

                                          HEATHER E. WILLIAMS
Federal Defender

*/s/ Reed Grantham*
REED GRANTHAM
Assistant Federal Defender
Attorneys for Defendant
TIMOTHY PANUCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On February 22, 2024, Discord, an instant messaging and social media platform that allows communication through voice calls, video calls, text messaging, and media, generated and sent an electronic CyberTipline Report to the National Center for Missing & Exploited Children (NCMEC)[1] indicating that a file that it suspected of depicting child pornography had been uploaded on their platform. *See* Exhibit A. Specifically, Discord reported that a single ".gif"[2] file, labeled "IMG_1739.gif," had been uploaded by a Discord user on February 22, 2024. *See* Exhibit A at 3. Ten minutes after the .gif file was uploaded to its platform, Discord provided the .gif file to NCMEC and included the user account's phone number, username, user ID, and Internet Protocol (IP) address. *See* Exhibit A at 3.

After receiving the CyberTipline Report from Discord, NCMEC staff conducted an IP address and phone number look-up using publicly available information and came to believe that the IP address and phone number associated with the Discord user account that uploaded the .gif file originated in Fresno, California. *See* Exhibit A at 5. On February 29, 2024, one week after receiving the report from Discord, NCMEC staff supplemented the CyberTipline Report, and made it, and the .gif file reported by Discord, available to the "Fresno County Sheriff's Department." Exhibit A at 5-7, 8.

On March 4, 2024, Fresno County Sheriff's Office (FCSO) Deputy Jovan Tamayo was assigned to investigate the CyberTipline Report sent to the FCSO by NCMEC. *See* Exhibit B at 9. On or about March 4, 2024, Deputy Tamayo "reviewed the [.gif] file" that had been provided by NCMEC and prepared a written description of the file. *See* Exhibit B at 9-10. Based on his viewing of the .gif file, Deputy Tamayo sought and obtained a search warrant for records from Discord for the user account that uploaded the .gif file and from AT&T relating to the phone

---

[1] The National Center for Missing & Exploited Children (NCMEC) is a private, nonprofit organization that provides resources for parents, children, law enforcement agencies, schools, and communities to assist in locating missing children and to raise public awareness about ways to prevent child abduction, and child sexual abuse.

[2] "GIF" stands for "graphics interchange format." GIFs typically are animated and resemble short, repeating video clips without sound.

1  number associated with the Discord user account. *See* Exhibit B. This search warrant was signed
2  and issued by Fresno County Superior Court Judge John Vogt on March 5, 2024. *See* Exhibit B.
3      Thereafter, as a result of the information obtained through the execution of the March 5,
4  2024 Fresno County Superior Court search warrant, Homeland Security Investigations (HSI)
5  Special Agent Jackie Lovato sought and obtained a federal search warrant to search Mr.
6  Panuco's residence, his person, and his vehicle. *See* Exhibit C. This search warrant was issued
7  and signed on April 2, 2024, by Eastern District of California United States Magistrate Judge
8  Erica P. Grosjean, and was executed on April 4, 2024. *See* Exhibit C.
9      An Indictment issued in this case on May 2, 2024, charging Mr. Panuco with one count
10 of receipt of material involving the sexual exploitation of minors, in violation of 18 U.S.C. §
11 2252(a)(2). *See* Dkt. #1. Mr. Panuco made his initial appearance on May 6, 2024, at which time
12 Mr. Panuco entered a plea of not guilty to the sole charge in the Indictment. *See* Dkt. #5.

## II.     ARGUMENT

14 The Fourth Amendment protects "[t]he right of the people to be secure in their persons,
15 houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend.
16 IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of
17 individuals against arbitrary invasions by government officials." *Carpenter v. United States*, 585
18 U.S. 296, 303 (2018) (internal citations and quotation marks omitted). For this reason, "[t]he
19 bulwark of Fourth Amendment protection . . . is the Warrant Clause, requiring that, absent
20 certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before
21 embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Accordingly,
22 "warrantless searches" of a person's papers or effects are "presumptively unreasonable" and,
23 thus, violative of the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984);
24 *see also United States v. Anderson*, 101 F.4th 586, 591 (9th Cir. 2024) (en banc).
25     In this case, on February 22, 2024, Discord reported to NCMEC that a .gif file that
26 included apparent child pornography had been uploaded on their platform. *See* Exhibit A at 3.
27 One week later, on February 29, 2024, NCMEC supplemented the CyberTipline Report, and
28 provided it, and the .gif file that was uploaded to the Discord platform, to the Fresno County

1  Sheriff's Office. *See* Exhibit A at 8. Once with the Fresno County Sheriff's Office, a deputy
2  there viewed the .gif file, and prepared a written description of the file. *See* Exhibit B at 9. The
3  deputy then drafted an affidavit in support of the issuance of a search warrant for records from
4  Discord and AT&T wherein he described what he saw when he viewed the .gif file. *See* Exhibit
5  B at 6. The deputy's viewing of the .gif file that was provided by NCMEC constituted a
6  warrantless search in violation of the Fourth Amendment.

7  The above series of investigative steps mirror those that gave rise to the Ninth Circuit's
8  holding in *United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021). There, "Google, using its
9  proprietary technology, 'became aware' that Wilson had attached to emails in his email account .
10 . . four files that included apparent child pornography." *Wilson*, 13 F.4th at 965. Google then
11 "automatically generated and sent an electronic CyberTipline report to NCMEC" that included
12 the "four email attachments." *Id.* Google's report included "Wilson's email address, secondary
13 email address, and IP addresses." *Id.* After receiving the CyberTipline Report, "NCMEC
14 supplemented Google's report" and "then forwarded the CyberTip[line Report]," and the four
15 email attachments, to the San Diego Internet Crimes Against Children Task Force (ICAC)." *Id.*
16 An officer with the San Diego ICAC Task Force then "looked at Wilson's four email
17 attachments," created a "detailed description[] of each of the[] images," and "applied for
18 warrants to search both Wilson's email account and Wilson's home, describing the attachments
19 in detail in the application." *Id.* at 964, 965, 966.

20 The problem, however, was that "[n]o one at Google had opened or viewed Wilson's
21 email attachments" "concurrently to submitting the report to NCMEC." *Wilson*, 13 F.4th at 964,
22 965. This was because "[Google's] [CyberTipline] Report was based on an automated
23 assessment that the images Wilson uploaded were the same as images other Google employees
24 had earlier viewed and classified as child pornography." *Id.* In addition, no one at NCMEC
25 "open[ed] or view[ed]" the attachments that it ultimately passed along to the San Diego ICAC
26 Task Force. *Id.* Accordingly, "[u]ntil [the San Diego ICAC Task Force officer] viewed Wilson's
27 images, no one"—neither an employee at Google nor an employee at NCMEC—"had seen
28 them" and it was"[o]nly by viewing the images" that "the government confirm[ed], and

1    convey[ed] to the fact finder in Wilson's criminal case, that they depicted child pornography
2    under the applicable federal standard." *Id.* at 973.
3           Before the district court, Wilson moved "to suppress all evidence seized from his email
4    account and residence" on the grounds that the officer's "review of his email attachments
5    without a warrant was impermissible under the Fourth Amendment." *Wilson*, 13 F.4th at 966.
6    The government argued that the warrantless search was permissible under the "private search
7    exception" which "concerns circumstances in which a private party's intrusions would have
8    constituted a search had the government conducted it and the material discovered by the private
9    party then comes into the government's possession." *Id.* at 967. The district court denied
10   Wilson's motion to suppress finding that "the government's warrantless search did not exceed
11   the scope of the antecedent private search" and therefore "did not require a warrant." *Id.*
12          On appeal, the Ninth Circuit reversed the district court's denial of Wilson's motion to
13   suppress, and squarely addressed "whether the government's warrantless search of Wilson's
14   email attachments was justified by the private search exception to the Fourth Amendment."
15   *Wilson*, 13 F.4th at 964. In considering the issue, the Ninth Circuit stated that "[t]he critical fact"
16   was "that no Google employee viewed Wilson's files before [the San Diego ICAC Task Force
17   officer] did" and "[b]ecause the government saw more from its search than the private party had
18   seen, it exceeded the scope of the private search." *Id.* at 974, 980. As a result, the Ninth Circuit
19   held that "[w]hen the government views anything other than the specific materials that a private
20   party saw during the course of a private search, the government search exceeds the scope of the
21   private search" and the private search exception cannot justify the warrantless search. *Id.*
22          In this case, as set forth above, Discord reported that the .gif file at issue was uploaded to
23   its platform on February 22, 2024, at 03:07:08 UTC.[3] *See* Exhibit A at 3 (indicating an "Incident
24   Time" of "2-22-2024 03:07:08 UTC"). Discord then generated and sent the electronic
25   CyberTipline Report to NCMEC on February 22, 2024, at 03:17:17 UTC. *See* Exhibit A at 1
26   (indicating that the CyberTipline Report was "[r]eceived by NCMEC on 02-22-2024 03:17:17
27
28   [3] "UTC" refers to "Coordinated Universal Time" which is the primary time standard globally used to regulate clocks and time. Coordinated Universal Time is seven or eight hours ahead of the Pacific Time Zone (PST), depending on the time of the year. An incident that occurred on February 22, 2024, at 03:07:08 UTC occurred at 19:07:08 PST (7:07 p.m.) on February 21, 2024.

1 UTC"). This means that within ten minutes from the second the .gif file was uploaded to its
2 platform, Discord identified and flagged the .gif file, generated a CyberTipline Report, and sent
3 the report to NCMEC. In filling out the CyberTipline form, Discord entered "[y]es" to the
4 question, "[d]id Reporting ESP[4] view entire contents of uploaded file?" Exhibit A at 4. NCMEC,
5 for its part, indicated that its staff had not viewed the .gif file that had been reported and provided
6 by Discord. *See* Exhibit A at 7 ("NCMEC staff have not viewed the following uploaded files and
7 have no information concerning the content of the uploaded files.").

8       In order to determine whether, in the ten minutes between the time that the .gif file was
9 uploaded to the Discord platform and when the CyberTipline Report was submitted to NCMEC,
10 an individual at Discord actually and personally "view[ed] [the] entire contents" of the .gif file,
11 Mr. Panuco sought a subpoena for records from Discord pursuant to Rule 17(c) of the Federal
12 Rules of Criminal Procedure. On January 8, 2025, this Court issued a subpoena to Discord for
13 "documents, electronically stored information, or objects" responsive to "Attachment A" of the
14 subpoena. Exhibit D at 1. Attachment A of the subpoena specifically requested the production of
15 any documents responsive to the following:

> Any contemporaneous records identifying the employee at Discord Inc. who viewed the entire contents of the file that was uploaded to Discord on February 22, 2024, that is the subject of the National Center for Missing and Exploited Children (NCMEC) CyberTipline Report 188008527, and any contemporaneous records indicating the date and time the employee at Discord Inc. viewed said contents and the process and procedures followed by the employee in so viewing.

21 Exhibit D at 3. The January 8, 2025 subpoena was served on Discord on January 13, 2025. *See*
22 Exhibit D at 2, 4.

23       On January 24, 2025, counsel for Mr. Panuco received an email from Jacob Sommer,
24 who indicated that he worked with Discord in responding to subpoenas. *See* Declaration ¶ 2. Mr.
25 Sommer requested to set a time to meet and confer regarding the January 8, 2025 subpoena. *See*
26 Declaration ¶ 2. That same day, counsel for Mr. Panuco responded via email and proposed
27 several dates and times for a phone call the following week. *See* Declaration ¶ 3. On January 29,
28 2025, counsel for Mr. Panuco spoke with Mr. Sommer via telephone. *See* Declaration ¶ 5.

---

[4] "ESP" appears to refer to the "Electronic Service Provider," which in this instance would be Discord.

Panuco - Motion to Suppress                        7

During the call, Mr. Sommer indicated he would attempt to determine whether Discord had any records responsive to the language of Attachment A of the January 8, 2025 subpoena. *See* Declaration ¶ 5. On February 19, 2025, Mr. Sommer emailed counsel for Mr. Panuco and indicated that he had an update and that it would be easiest to talk over the phone. *See* Declaration ¶ 6. That same day, counsel for Mr. Panuco proposed a phone call for the following day. *See* Declaration ¶ 7. Since counsel for Mr. Panuco did not receive a response to counsel's February 19, 2025 email, on February 25, 2025, counsel for Mr. Panuco sent a follow-up email and proposed a phone call for the following day. *See* Declaration ¶ 8. Counsel for Mr. Panuco also indicated that if a phone call was not necessary that any records responsive to Attachment A of the January 8, 2025 subpoena could be emailed to counsel. *See* Declaration ¶ 8. On February 28, 2025, Mr. Sommer called counsel for Mr. Panuco. *See* Declaration ¶ 9. During the call, Mr. Sommer indicated that Discord did not have records that were specifically responsive to the language of Attachment A of the January 8, 2025 subpoena. *See* Declaration ¶ 9.

As an initial matter, Mr. Panuco contends that the private search exception, created by the Supreme Court in *Walter v. United States*, 447 U.S. 649 (1980) and *United States v. Jacobsen*, 466 U.S. 109 (1984), and applied and addressed by the Ninth Circuit in *Wilson*, should be overruled. "The notion that private searches insulate from Fourth Amendment scrutiny subsequent governmental searches of the same or lesser scope is inconsistent with traditional Fourth Amendment principles." *Walter v. United States*, 447 U.S. 649, 660 (1980) (White, J. and Brennan, J., concurring); *see United States v. Jacobsen*, 466 U.S. 109, 129-34 (1984) (White, J., concurring in part and concurring in judgment); *see also Wilson*, 13 F.4th at 968 ("Beginning from the initial articulation of the private search doctrine, the extent to which it excuses the government from compliance with the warrant requirement of the Fourth Amendment has been the subject of concern."); 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.8(b) (6th ed. 2020) (describing the private search exception as "unsettling" for its potential reach). Moreover, the private search exception is particularly untenable as it relates to electronic communications under a property-based analysis. *See United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016) (then-Circuit Judge Gorsuch noting "the uncertain status of

1  [the private search exception articulated in *United States v. Jacobsen*, 466 U.S. 109 (1984)] after
2  [*United States v. Jones*, 565 U.S. 400 (2012)]").

3     However, even assuming the private search exception's continued validity in this context,
4  the burden falls on the government to prove that its warrantless search was justified under this
5  exception. *See Wilson*, 13 F.4th at 971; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 455
6  (1971) (*quoting United States v. Jeffers*, 342 U.S. 48, 51 (1951)). Here, the government cannot
7  meet its burden of showing that an individual at Discord actually "view[ed] [the] entire contents"
8  of the .gif file. As set forth above, the .gif file was reported to NCMEC within ten minutes from
9  the moment it was uploaded to the Discord platform. *See* Exhibit A at 1, 3. During that brief
10 window, Discord would have had to have flagged the file, an employee would have had to have
11 personally reviewed its entire contents, and then generated the CyberTipline Report, and
12 immediately sent the report to NCMEC. And yet, a judicially authorized subpoena requesting (1)
13 "any contemporaneous records identifying the employee at Discord Inc. who viewed the entire
14 contents of the file," (2) "any contemporaneous records indicating the date and time the
15 employee at Discord Inc. viewed [the] contents [of the file]," and (3) "the process and
16 procedures followed by the employee in so viewing [the file]," yielded no responsive records.
17 Exhibit D at 3. Accordingly, because the government cannot meet its burden to establish that it
18 "saw [no] more from its search than the private party had seen," the deputy's warrantless search
19 violated the Fourth Amendment. *Wilson*, 13 F.4th at 974.

20    Consequently, suppression of all evidence obtained as a result of the warrantless search is
21 required. Indeed, absent the information that the FCSO deputy obtained by viewing the .gif file
22 without a warrant, his affidavit would not support the issuance of the March 5, 2024 Fresno
23 County Superior Court search warrant for Discord and AT&T records. *See* Exhibit B; *Wilson*, 13
24 F.4th at 973 (holding that if the officer's affidavit in support of the warrant had been "excised of
25 the tainted evidence" it "would not support issuance of the search warrant for Defendant's email
26 account"). In addition, all evidence obtained as a result of the subsequent search of Mr. Panuco's
27 person, vehicle, and residence on April 4, 2024, and thereafter, pursuant to the federal search
28 warrant issued on April 2, 2024, must also be suppressed because the exclusionary rule applies to

"both the primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," i.e., "the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotations omitted)); *see also Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

### III.    CONCLUSION

The search that took place on March 4, 2024, of the .gif file reported by Discord, and then provided to law enforcement by NCMEC, was a warrantless search. It was *per se* unreasonable, and it violated the Fourth Amendment's warrant requirement. As the Supreme Court has indicated, it is "the most basic constitutional rule" that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable." *Coolidge*, 403 U.S. at 454-55 (internal citations and quotation marks omitted). Any exception to this rule must be "jealously and carefully drawn" and "the burden is on those seeking the exception to show" that it applies. *Id.* at 455 (internal citations and quotation marks omitted). Because the government cannot meet its burden here, suppression of all evidence obtained as a result of the warrantless search that occurred on or about March 4, 2024, is warranted.

Dated: June 6, 2025                                         Respectfully submitted,

                                                               HEATHER E. WILLIAMS
                                                                Federal Defender

                                                                */s/ Reed Grantham*
                                                                REED GRANTHAM
                                                                Assistant Federal Defender
                                                                Attorneys for Defendant
                                                                TIMOTHY PANUCO